REQUESTED BY: Charles G. Nelson, Executive Director, Nebraska Board of Engineers ; Architects
INTRODUCTION
In Op. Att'y Gen. No. 96057 (July 23, 1996) the Attorney General concluded that, under Neb. Rev. Stat. § 81-2106, individuals licensed by the State Electrical Board as Class A or B electrical contractors, electrical contractors or Class A or B master electricians "have the authority to design, plan, lay out, and supervise electrical installations performed for another, for electric light, heat, power, and other purposes." Id. at 7.
Referring to the fact that the statutes governing licensed professional engineers and architects have changed since 1996 and making an argument as to why you believe the Attorney General's conclusion was wrong, you ask us now to re-visit Opinion No. 96057, presumably with the view to changing the above conclusion regarding the authority of licensed electrical contractors and master electricians.
Having reviewed the Engineers and Architects Regulation Act, Neb. Rev. Stat. §§ 81-3401 through 81-3455 (1999 and Cum. Supp. 2004), to which you refer, and having considered your alternative understanding of the word "installation," as used in § 81-2106 (Cum. Supp. 2004), we see no good reason to change or alter the conclusion we reached in 1996 concerning the authority of certain types of licensed electricians and electrical contractors "to design, plan, lay out, and supervise electrical installations performed for another."
Subsequent legislation does not call for a change in the conclusion reached in Opinion No. 96057.
Opinion No. 96057 was directed toward an apparent conflict between the language of § 81-2106 concerning the authority of licensed electricians and electrical contractors and the language of then-existing Neb. Rev. Stat. § 81-839 which appeared to require a professional engineer's license in order to design or plan an electrical installation. The question addressed in the opinion ultimately came down to whether licensed master electricians and electrical contractors would also have to become licensed professional engineers before they could design, plan, or lay out such electrical installations. While acknowledging the existence of some ambiguity in how these two statutes were meant to work, we determined, for reasons expressed in detail in the opinion, that they could be reconciled and made to work if § 81-2106 and § 81-839 were interpreted together to mean "that a person designing electrical installations must be either licensed as an electrical contractor or master electrician or be a registered professional engineer." Id. at 2. (Emphasis supplied.)
The first option set forth in this conclusion ___, i.e., that a person licensed as an electrical contractor or master electrician may design electrical installations — was based on the language of § 81-2106. That statute has not been changed in any significant way since Opinion No. 96057 was issued in 1996.[1] Accordingly, there has been no alteration of the statute which would compel or justify a change in the conclusion we reached in Opinion No. 96057 as to the interpretation of § 81-2106.
The second option set forth in the conclusion of Opinion No. 96057 ___, i.e., that registered professional engineers are also authorized to design electrical installations — was premised on the pertinent statutes regulating the practice of engineering in existence at that time. Shortly after the opinion was issued, in 1997, the Legislature repealed those particular statutes and enacted the Engineers and Architects Regulation Act, which is a comprehensive statutory scheme for the licensing and regulation of professional engineers and architects in Nebraska. There is nothing in the act that would change our opinion to the effect that licensed professional engineers are authorized by law to design electrical installations for others. This conclusion is supported by §81-3402, which prohibits any person from the practice of engineering unless duly licensed as a professional engineer or exempt from the provisions of the act. The "practice of engineering" is defined broadly in § 81-3421 to include design of "engineering works and systems," including equipment, processes and projects that are electrical in nature. Thus, it is clear under the act that licensed professional engineers are authorized to design electrical installations.
It is apparent, however, that the passage of the Engineers and Architects Regulation Act did not in any way change § 81-2106 or alter the authorized scope of practice of licensed electricians and electrical contractors in certain classes. The act itself, in § 81-3453(8) (Cum Supp. 2004), specifically states that "[t]he provisions of the Engineers and Architects Regulation Act regulating the practice of engineering do not apply to . . . [t]he practice of any other certified trade or legally recognized profession"; and, as noted above, the prohibition on the practice of engineering by someone who is not licensed under the act does not apply to those who are exempt from licensure under the act. § 81-3402. The act, therefore, is addressed to professional engineers and architects and was not meant to impact on the scope of practice of any other "certified trade or legally recognized profession," such as that of licensed electricians and electrical contractors.
In summary, the subsequent repeal of § 81-839 and passage of the Engineers and Architects Regulation Act provide no reason to alter the conclusion reached in Opinion No. 96057 that "a person designing electrical installations must be either licensed as an electrical contractor or master electrician or be a registered professional engineer." Id. at 2.
Absent a change in the statutes indicating that the earlier conclusion is contrary to the Legislature's intent, the conclusion reached in Opinion No. 96057 will not be changed.
We recognized in Opinion No. 96057 that there was some ambiguity in §81-2106 and that the statute might be read in different ways. One such ambiguity, noted in you letter requesting this present opinion, has to do with the meaning of the word "installation," as used in § 81-2106. One possible interpretation is that "installation" refers only to the physical act of putting together an electrical system or project, as opposed to the finished product. Such an interpretation of the statutory language would mean that licensed master electricians and electrical contractors would be, in essence, limited to construction management duties such as planning when and how the actual physical work of "installing" an electrical system or project will occur. The "design" of the finished product would be left to licensed professional engineers.
Were we being asked to interpret § 81-2106 for the first time, we might be tempted to adopt the foregoing interpretation. We are, however, not writing on a clean slate. In Opinion No. 96057 the word "installation" was clearly understood to encompass the finished product, as well as the act of "installing" it. In other words, we have already interpreted §81-2106 as permitting licensed master electricians and electrical contractors to "plan" or "design" the finished product or "installation," as well as plan the actual installation work itself.
Opinion No. 96057 was issued more than eight and a half years ago. Yet, as discussed above, the Legislature has not, in any relevant way, amended § 81-2106 in those intervening years, even though the statute was clearly before the Legislature for revision in 2003. This suggests that our interpretation corresponds to legislative intent. While it is true that an Attorney General's opinion "is not to be regarded as legal precedent or authority of such character as a judicial decision," Mogis v. Lyman-Richey Sand ; Gravel Corp., 189 F.2d 130, 139-40 (8th Cir. 1951) (Nebr. law), we believe that an Attorney General's opinion interpreting an unclear statute has standing similar to that of administrative construction of a statute by an executive department charged with its enforcement. In that regard it is well-settled that "[a]lthough construction of a statute by a department charged with enforcing it is not controlling, considerable weight will be given to such a construction, particularly when the Legislature has not taken any action to change such an interpretation." Cox Cable of Omaha, Inc. v. Nebraska Department of Revenue, 254 Neb. 598, 603, 578 N.W.2d 423, 426
(1998) (emphasis supplied). Accord, Capitol City Telephone, Inc. v. Nebraska Department of Revenue, 264 Neb. 515, 527, 650 N.W.2d 467, 477
(2002).
Moreover, while the Legislature enacted the Engineers and Architects Regulation Act after Opinion No. 96057 was issued, it did nothing to amend or alter § 81-2106 at that point. Certainly, while considering the act, the scope of practice of professional engineers and other trades or professions that might impact on the regulation of engineers and architects would have been "on the table" in the Legislature; and the conclusion of Opinion No. 96057 would have been relevant to the Legislature's consideration. Again, the fact that the Legislature made no changes in § 81-2106 at that time and specifically exempted other licensed trades and professions from the "practice of engineering" portions of the Engineers and Architects Regulation Act supports the idea that our interpretation of § 81-2106 has been accepted as comporting with the Legislature's intent.[2]
Given the foregoing history, we are unwilling to alter or change the conclusion reached in Opinion No. 96057 just because a plausible argument for a contrary conclusion can be made. Absent an amendment to the statutes clarifying the legislative intent as to whether licensed electricians and electrical contractors may design and plan finished electrical installations for others, we adhere to our conclusion that they do have such authority.
 CONCLUSION
Having now reviewed our conclusion in Opinion No. 96057 in light of subsequent developments our opinion continues to be that an individual licensed as a Class B electrical contractor, an electrical contractor, a Class A Master electrician, or a Class B master electrician has the authority to design, plan, lay out, and supervise electrical installations performed for another, for electric light, heat, power, and other purposes.
Sincerely,
 JON BRUNING Attorney General
 Charles E. Lowe Assistant Attorney General
APPROVED:
[1] The statute was changed in 2003 by LB 126 to eliminate the authority of Class A electrical contractors to "plan, lay out, or supervise" electrical installations. The remainder of the statute was left as it had previously existed. Neb. Rev. Stat. § 81-2106 (Cum. Supp. 2004).
[2] In Opinion No. 96057 itself we commented: "Whether this [the Attorney General's] position would be adopted by the Nebraska courts is not entirely clear. The Electrical Board or the Board of Examiners may therefore wish to request the Legislature to address this issue in future legislation." Id. at 6. Yet there has been no such legislation in the interim.